**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE RODRIGUEZ,<br><br>       Plaintiff,<br><br>v.<br><br>MENARD, INC.,<br><br>       Defendant. | Case No. 23 C 4235<br><br>Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff George Rodriguez sued Defendant Menard, Inc. after he slipped and fell on spilled coffee in a Menard retail store. Defendant removed the case to federal court based on diversity jurisdiction. Following fact discovery, Defendant moved for summary judgment as to liability only. For the reasons discussed below, the motion for summary judgment (Dkt. 42) is denied.

**BACKGROUND**[1]

**I.    Plaintiff's Fall**

On July 18, 2021, at around 1:30 PM, Plaintiff George Rodriguez visited a retail hardware store operated by Menard located at 2524 W. Jefferson Street, Joliet, Illinois ("the Menard store"). (Dkt. 50 at ¶¶ 9, 23).[2] On the same date and around the same time, two young ladies were walking through the same Menard store when one spilled her coffee. (*Id.* at ¶ 10). The spilled coffee was a

---

[1] The relevant facts are taken from the parties' respective Local Rule 56.1 statements and are undisputed unless otherwise noted. For brevity, the Court refers to Plaintiff's Response to Defendant's Statement of Material Facts as "Dkt. 50" and "Defendant's Response to Plaintiff's Statement of Additional Material Facts" as "Dkt. 60." Because the Court finds, as discussed *infra*, that the question of whether Defendant owed Plaintiff a duty must be decided by the factfinder, most of Plaintiff's additional material facts (*i.e.*, relating to Defendant's policies and procedures regarding spills, team member training regarding spills, what the Menard employee was doing at the time of Plaintiff's fall, etc.) have no bearing on the analysis of the instant motion.

[2] Unless otherwise noted, page numbers in citations to the docket reference "PageID #" in the CM/ECF header of the filing, not other page numbers in the header or footer of the document.

1

different color than the floor; the parties dispute the extent of the contrast between the color of the coffee and the color of the floor. (*Id.* at ¶ 11). Menard employee Andrew Darley first became aware of the spilled coffee when he was walking past the registers on his way to the service desk. (*Id.* at ¶ 12; Darley Dep. at 6:17-7:3, Dkt. 43-2). Darley saw the two young ladies near the spill and one told him that she had spilled her coffee. (Dkt. 50 at ¶ 12).

According to Darley, he informed the store's front end manager, Daniella Casillas-Perez, about the spill. (Dkt. 60 at ¶ 1). Casillas-Perez directed Darley to stand by the spill and warn customers while a cashier gathered cleaning supplies. (Dkt. 50 at ¶ 13; Dkt. 60 at ¶ 2). The purpose of having an employee stand by the spill is to mitigate any accidents, warn customers of the existence of the spill, and try to prevent them from entering the area in the first place. (Dkt. 50 at ¶¶ 15-16). Darley returned to the spill and stood adjacent to it, which allowed him to see customers approaching from in front of him or either side. (*Id.* at ¶¶ 14-16). While Defendant (and Darley) say that Darley was looking around to ensure no one slipped, Plaintiff argues that there were several times when Darley was looking at the floor rather than for people who may be at risk of slipping. (*Id.*)

Six people walked by the spilled coffee without issue before Plaintiff, some of whom did not receive a warning from Darley. (*Id.* at ¶¶ 17-19, 21-22). As one individual approached the area, Darley warned him about the spill by pointing to it. (*Id.* at ¶ 20). The patron avoided the spill, but the parties dispute whether that was because of Darley's warning or his own observations. (*Id.* at ¶ 21).

As Plaintiff approached the spill, Darley was still standing near it. (*Id.* at ¶ 23). Menard and Darley claim that Darley was looking around and saw Plaintiff approach, but Plaintiff disputes this and contends that Darley was looking down at the floor. (*Id.*) Regardless, Darley pointed to

the spill and verbally warned Plaintiff about it seconds before Plaintiff walked into the spill, slipped, and fell awkwardly. (*Id.* at ¶¶ 23, 25). While Plaintiff remembers a Menard employee speaking to him prior to his fall, he does not recall what the employee said or even if he said, "watch out." (*Id.* at ¶ 24). Casillas-Perez was notified of Plaintiff's fall within two minutes of instructing the cashier to gather cleaning supplies. (*Id.* at ¶ 26). Cleaning supplies arrived at the scene of the spill within one minute of Plaintiff's fall. (*Id.* at ¶ 27).[3]

## II. Procedural History

In June 2023, Plaintiff brought a two-count complaint in the Circuit Court of Will County against Defendant asserting claims of premises liability and negligence. (Compl., Dkt. 1-1). Defendant removed the case to federal court under 28 U.S.C. § 1332(a)(1). (Notice of Removal at 1-3, Dkt. 1). In July 2024, Judge Sheila Finnegan granted Defendant's motion to bifurcate discovery between fact and damages (Dkt. 36), without objection, as the parties agreed that depositions of treating healthcare providers and any medical expert discovery that would necessarily follow had no bearing on the issues to be raised in dispositive motion practice. (Dkt. 37). With fact discovery essentially complete, Defendant now moves for summary judgment in its favor on the question of liability.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[3] Menard also submitted in the record a videorecording of the incident (Dkt. 46), which the Court has reviewed and considered. While "[a] conclusive video allows a court to know what happened and decide the legal consequences[,]" sometimes a video "does not unambiguously establish" what happened, thus rendering summary judgment improper. *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019). Review of video evidence by the Court is proper. *See generally Scott v. Harris*, 550 U.S. 372 (2007).

party" and "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *id.* at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). In considering a motion for summary judgment, all "justifiable" inferences are drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence."). Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted).

## **DISCUSSION**

To succeed on a claim of negligence under Illinois law,[4] a plaintiff must prove that (1) the defendant owed plaintiff a duty; (2) the defendant breached that duty; and (3) such a breach proximately caused injury to the plaintiff. *Dunn v. Menard, Inc.*, 880 F.3d at 906; *Ward v. K Mart Corp.*, 554 N.E. 2d 223, 226 (Ill. 1990). Defendant argues that "Plaintiff has not established that Defendant owed him a duty to protect him against slipping on the open and obvious spill," and, even if it did, "Plaintiff has not established that Defendant breached said duty." (Def.'s Mot. at 78, Dkt. 42). But because genuine issues of material fact exist, summary judgment must be denied.

---

[4] Neither side disputes that "[s]tate law provides the substantive law in a diversity action." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quotations and citations omitted).

"Whether a duty exists is a question of law to be determined by the court." *Dunn*, 880 F.3d at 906. In determining whether a duty exists, the court looks at "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Ward*, 554 N.E. 2d at 226 (Ill. 1990). "The operator of a business, though not an insurer of his customer's safety, owe[s] his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition for use by the invitees." *Ward*, 554 N.E. 2d at 227. *See also Deibert v. Bauer Bros. Const. Co.*, Inc., 566 N.E. 2d 239, 242 (Ill. 1990) ("Generally, . . . a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition."); *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) ("In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them."). Courts will typically consider four factors to determine whether a duty exists: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Dunn*, 880 F.3d at 906 (quotations and citation omitted); *see also Ward*, 554 N.E. 2d at 226-27.

Illinois law recognizes exceptions to the general duty of care owed by a potential defendant, one of those being the open and obvious doctrine. This is because "the law generally assumes that persons who encounter [obvious and common] conditions will take care to avoid any danger inherent in such conditions. . . . The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Dunn*, 880 F.3d at 906 (quotations and citations omitted). "Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger

5

posed by the condition." *Ward*, 554 N.E. 2d at 230. The Supreme Court of Illinois has stated that when a condition is "obvious" it "denotes that 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" *Deibert*, 566 N.E. 2d at 242 (quoting Restatement (Second) of Torts § 343A, comment *b*, at 219 (1965)). The analysis is objective rather than subjective: "the determination of whether the condition is open and obvious depends not on plaintiff's subjective knowledge but, rather, on the objective knowledge of a reasonable person confronted with the same condition." *Dunn*, 880 F. 3d at 907 (quotations and citations omitted).

While the "open and obvious" question is typically a factual inquiry, it can be considered a question of law when "no dispute exists as to the physical nature of the condition[.]" *Bruns v. City of Centralia*, 21 N.E. 3d 684, 690 (Ill. 2014). Defendant contends here that there is no dispute the spill was "open and obvious," (Def.'s Mem. in Supp. of Mot. for Summ. J. at 163-166, Dkt. 44), while Plaintiff argues that this is a question of fact to be resolved by a jury. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 254-256, Dkt. 55). Plaintiff has the better argument.

According to Defendant, the contrast between the color of the coffee and the floor and the fact that six people passed by the coffee before Plaintiff without incident renders this condition "open and obvious." (Def.'s Mem. in Supp. of Mot. for Summ. J. at 165). The Court disagrees. True, video evidence suggests that the coffee was lighter in color than the concrete floor. (*See generally* Exs. 6-7 to Def.'s Statement of Material Facts, Dkt. 45). But critical in this case, as depicted in the video, is the fact that Plaintiff slipped on the coffee almost instantly after making a ninety degree turn to walk down the aisle where the spill was located, a direction from which none of the prior six individuals had come. Significantly, none of the cases Defendant cites in support of its argument contemplate a situation where a plaintiff was confronted with a condition

6

that was not able to be observed until the second before it presented a risk. *See, e.g.*, *Reid*, 2007 WL 2778639, at *1 (plaintiff "was able to observe the aisle" which was "adequately lit" prior to approaching the spilled milkshake). Furthermore, Darley and a shopping cart stood off to the left between Plaintiff and the spill as Plaintiff approached the scene and made the left turn. (*See* Ex. 6 to Def.'s Statement of Material Facts at 13:26:47-13:26:48).

As such, a reasonable jury may find that, given the location of the spill, the direction from which Plaintiff was walking, the turn he made into the aisle, and the positioning of the shopping cart and Menard employee, neither the condition or, as it would logically follow, the risk of the condition, would have been apparent to or recognized by a reasonable person in Plaintiff's position. Having reviewed the video multiple times at slower speeds, the Court concludes that jurors could find that Darley was actually looking down at his cell phone at the pivotal moment when Plaintiff was quickly approaching a spill somewhat obscured by the cart, and thus any warning came too late. Alternatively, a reasonable jury may just as likely find that a reasonable person in Plaintiff's position could have heeded Darley's warning and avoided the spill altogether, despite the direction from which he was walking, the abruptness of the turn, and the placement of the shopping cart and Menard employee. Given that both outcomes are plausible, this case presents a triable issue as to whether the spilled coffee constituted an "open and obvious" condition that must be resolved by a jury.

Determining whether a condition is "open and obvious" does not end the duty inquiry. *See Bruns*, 21 N.E. 3d at 690. But having identified a genuine dispute of material fact, it is unnecessary for the Court to analyze the remaining elements of negligence or premises liability.[5]

---

[5] A plaintiff who brings an action for premises liability must prove negligence *and* the following three elements: (1) the existence of a condition that presents an unreasonable risk of harm to a person on the premises; (2)

## **CONCLUSION**

For all the foregoing reasons, Defendant's motion for summary judgment is denied.

**DATED**: July 25, 2025                             **ENTERED**:

*LaShonda A. Hunt*
_____
LASHONDA A. HUNT
United States District Judge

---

defendants knew, or should have known, of the condition that posed an unreasonable risk of harm, and (3) defendants should have anticipated that people on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it. *Parker v. Four Seasons Hotel, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). Because the negligence count presents a question of fact for a jury, the premises liability count necessarily does, too.